IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Demmerick Eric Brown, )
(a/k/a Denrick Brown) )
    Petitioner, )
 )
v. ) 1:17cv52 (CMH/JFA)
 )
Karen Brown, et al., )
    Respondents. )

MEMORANDUM OPINION

Petitioner Demmerick Eric Brown, a Virginia inmate proceeding pro se, filed this petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his August 3, 2015 revocation of parole. The claims allege multiple constitutional violations, challenges to various statutes; the retroactivity of a policy to his pre-1995 convictions; that he is being detained past the time to which he was sentenced; his good time release date was incorrectly calculated and therefore void; and that he was not released on mandatory release dates. Respondents, Harold W. Clarke, Director of the Virginia Department of Corrections, Karen Brown, the Virginia Parole Board Chairman, and Wendy Brown, the Classification Manager, filed a Motion to Dismiss and Rule 5 Answer, and petitioner has filed responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Accordingly, this matter is now ripe for disposition and, for the reasons that follow, the Motion to Dismiss must be granted and the petition dismissed.

**I. Background**

Petitioner is challenging the revocation of his parole on August 3, 2015. His claims involve his prior convictions starting in 1981 and his releases and revocations by the Virginia

1

Parole Board (VPB). The chronology of events is as follows:

- On December 17, 1981, the Norfolk Circuit Court sentenced petitioner to two years and six months in prison for grand larceny (offense date June 7, 1981).

- On March 2, 1982, the Newport News Circuit Court sentenced petitioner to two years and six months in prison for burglary (offense date June 7, 1981) and two years and six months in prison for grand larceny (offense date June 7, 1981).

- On December 15, 1983, the VPB released petitioner from the Virginia Department of Corrections (VDOC) on discretionary parole. At that time, he had four years, four months, and four days left to serve.

- On January 23, 1984, petitioner was arrested for a new offense while on parole. On April 9, 1984, the Petersburg Circuit Court sentenced petitioner to twelve years in prison, with seven years suspended, for burglary (offense date January 23, 1984) and to five years in prison, with four years suspended, for grand larceny (offense date January 23, 1984). Petitioner had a net sentence to serve of six years.

- On March 18, 1987, petitioner was again released on discretionary parole. At that time, he had four years, seven months, and twenty-nine days left to serve.

- On July 30, 1987, he was arrested for new offenses while on parole.

- On January 27, 1988, the Hampton Circuit Court sentenced petitioner to fifteen years in prison for armed robbery (offense date July 19, 1987) and two years in prison for use of a firearm (offense date July 19, 1987).

- On May 19, 1988, the Chesterfield Circuit Court sentenced petitioner to five years in prison for robbery (offense date July 29, 1987).

- On June 14, 1988, the Henrico Circuit Court sentenced petitioner to nine years in prison for robbery (offense date July 30, 1987).

- On July 6, 1988, the Henrico Circuit Court sentenced the petitioner to seven years and six months in prison for robbery (offense date July 21, 1987).

- On July 19, 1988, the Henrico Circuit Court sentenced the petitioner to twenty years in prison, with fifteen years suspended, for robbery (offense date July 25, 1987).

- On October 2, 2013, petitioner was released on mandatory parole from the VDOC. At that time, the unserved portion of petitioner's term of imprisonment was twenty-three years, fifteen months, and forty days.

- On November 4, 2014, petitioner was arrested for a new offense while on parole and he was returned to VDOC custody.

- On January 29, 2015, the Chesapeake Circuit Court sentenced petitioner to five years in prison, with two years suspended for grand larceny (offense date March 10, 2014).

- On August 3, 2015, the VPB revoked the unserved portion of petitioner's terms of

imprisonment – twenty-three years, eight months, and eleven days for the parole violation. Petitioner received credit for time spent in jail.[1]

Petitioner filed a habeas petition in the Supreme Court of Virginia on November 6, 2015 challenging the VPB's August 3, 2015 revocation of his parole. The court dismissed the petition on May 17, 2016, citing Virginia Code § 8.01-654(A)(2), the state habeas statute of limitations, found the petition was not timely filed because it had not been filed within one year of October 2, 2013 – which was when petitioner alleged he had been unlawfully released and his cause of action accrued. Brown v. Ken Stolle, Record No. 151904. His petition for rehearing was denied on October 6, 2016.[2]

## II. Petitioner's Claims

On December 31, 2016, petitioner filed a federal petition for writ of habeas corpus and has raise the following claims:

> 1. The Department of Corrections and the Parole Board do not have the authority to lump petitioner's sentences together. The Department and the Board "lump[] all of his sentences for the purpose of awarding and forfeiting earned good time." [Dkt. No. 8 at 5]. The revocation of "23 years, 8 mos, and 11 days earned good time" resulting in a determination that petitioner had "24 years, 4 mos, and 9 days" to serve violated the Ex Post Facto, Due Process, and Double Jeopardy Clauses. [Id. at 18]. Petitioner had fully satisfied his six sentences from 1988 and should only have had a

---

[1] The history of events and sentences are detailed in an affidavit accompanying respondent's Brief in Support. [Dkt. No. 18-2 at 2-20]. The information through 1995 is also set forth in a prior opinion of this court involving petitioner. See Brown v. Virginia Dep't of Corrections, 886 F. Supp. 531, 532-33 (E.D. Va.) aff'd, 1995 U.S. App. LEXIS 33443, *1 (4th Cir. 1995).

[2] On January 19, 2016, petitioner filed a second habeas petition in the Supreme Court of Virginia challenging his January 29, 2015 conviction in the Chesapeake Circuit Court. Brown v. Ken Stolle, Record No. 160172. The petition was dismissed on October 25, 2016. On July 5, 2016, petitioner filed a third habeas petition in the Supreme Court of Virginia challenging all his convictions. Brown v. Clarke, Record No. 161110. The Supreme Court of Virginia dismissed the claims pursuant to Virginia Code § 8.01-663, which precludes relief based upon a prior adjudication of a claim or claims absent a change of circumstances. See, e.g., Hawks v. Cox, 175 S.E.2d 271, 273-74 (Va. 1970). The habeas petitions, however, are not relevant to petitioner's federal habeas claims.

remaining sentence for purposes of revocation of "4 years, 8 mos, and 3 days." [Id.].

2. Petitioner is being held unlawfully in violation of the Ex Post Facto, Due Process, and Equal Protection Clauses because the Parole Board "retroactively applied a 1994, Mandatory Parole Release law increasing [the] six month[] mandatory parole supervision [period] to three years mandatory supervision." [Id. at 6-7].

3. Petitioner is unlawfully held in prison in violation of a contractual agreement. Virginia breached the agreement in violation of the Ex Post Facto, Due Process, and Equal Protection Clauses because it revoked the 23 years, 8 months, and 11 days earned good time on October 2, 2013. [Id. at 8]. "Once good time is earned and credited reducing his sentence [the good time] cannot be forfeited." [Id. at 27].

4. Petitioner is detained unlawfully in violation of the Ex Post Facto, Due Process, Equal Protection, and Double Jeopardy Clauses. [Id. at 28]. "Mandatory parole is unconditional, and the Parole Board has no[] authority to set special conditions, terms on mandatory parole release." The Parole Board cannot rely upon Virginia Code §§ 53.1-136, 53.1-151, and 53.1-165 as authority for its actions because those statutes are unconstitutional. [Id. at 32].

5. VDOC improperly calculated petitioner's good time credits resulting in the miscalculation of his good time release date, rendering his release on October 2, 2013 void. [Id. at 36-38].

6. Petitioner should have been released on mandatory parole from each sentence imposed rather than one six-month mandatory release on his total term of confinement. [Id. at 39-40].

7. Petitioner is detained unlawfully in violation of the Ex Post Facto, Due Process, Equal Protection, and Double Jeopardy Clauses. [Id. at 28]. The policy adopted by the Parole Board in 1995, retroactively applied to petitioner, resulted in the unlawful revocation of "23 years, 8 months, and 11 days" of earned good time. [Id. at 41].

8. Petitioner is detained unlawfully in violation of the Ex Post Facto, Due Process, Equal Protection, and Double Jeopardy Clauses. [Id. at 46]. The revocation of "23 years, 8 months, and 11 days" of earned good time "triggered" the violation of his rights against Double Jeopardy, Ex Post Facto, Due Process, and Equal Protection.

9. Petitioner is unlawfully incarcerated in Virginia because of his loss of good time credits toward early release/parole by the commission of a new offense. The Parole Board does not have the authority to revoke good time. [Id. at 49-50].

10. The Parole Board's policy adopted in 1995 was applied to sentences that were imposed "15 years prior to 1995." [Id. at 52]. Since the policy was not in effect at the time of petitioner's sentences it cannot be applied retroactively to petitioner. [Id. 8 at 52].

### III. Exhaustion

Petitioner's § 2254 petition sets forth ten claims that are often duplicitous, overlapping, and repetitive. Respondent admits his claims are exhausted. [Dkt. No. 18 at 4].

### IV. Statute of Limitations

Respondent asserts that petitioner's federal habeas petition is untimely, and that the state habeas petition was dismissed as untimely. [Dkt. No. 18 at 3]. Respondent is correct, and petitioner has not established any basis for tolling, or excusing the default.

*A. Federal Statute of Limitations*

A petition for a writ of habeas corpus in federal court must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). Because petitioner challenges the execution of his sentence rather than the judgment of conviction, § 2244(d)(1)(D) controls the date on which the limitation period commences. The limitations period begins to run on the date that petitioner became aware of, or could have discovered by exercising due diligence, the alleged illegal deprivation of his constitutional rights by the VPB. See Karim v. Pearson, No. 3:16CV950, 2017 U.S. Dist. LEXIS 121976, 2017 WL 3300539, at *3-4 (E.D. Va. Aug. 2, 2017), appeal dismissed, 711 F. App'x 186 (4th Cir. 2018) (Section 2244(d)(1)(D) controls date on which the limitation period commences when habeas petitioner challenges the execution of a sentence rather than the judgment of conviction) (citing Childs v. Johnson, 3:09cv793, 2010 U.S. Dist. LEXIS 131058, 2010 WL 5186757, at *3 (E.D. Va. Dec. 10, 2010) (quoting Wade v. Robinson, 327 F.3d 328,

5

332-33 (4th Cir. 2003))).

All of petitioner's claims involve or derive from his October 2, 2013 release on mandatory parole. In the amended § 2254 petition, petitioner asserts that he was forced to accept mandatory parole even though he had not wanted to be released on October 2, 2013 because the 1994 change in the law "imposed the risk of loss of all accumulated earned good time." [Dkt. No. 8 at 20]. Petitioner's other claims discuss good time calculations in the 1980s and 1990s, [Id. at 35-38], all of which predate the October 2, 2013 date. Petitioner was also aware of the statutes governing parole that he alleges are unconstitutional, as well as the VPB policy he asserts is invalid or beyond the scope of the VPB's authority. His claims 9 and 10 are, essentially, a summary of his prior eight claims. For instance, in claim 9 he notes his "unconstitutionally incarcerated" claim is predicated on the changes to the parole statutes in 1995. Petitioner admits in claim 1 that he was aware of the "adopted forfeiture policy that was arbitrarily and retroactively applied to him" on October 2, 2013. [Id. 8 at 20, 49].[3] It is clear from a review of the amended petition, and the state habeas record, that petitioner knew of the facts that gave rise to his petition, or through the exercise of due diligence could have discovered those facts on or prior to October 2, 2013. Absent tolling, petitioner's habeas corpus petition was due to be filed no later than October 3, 2014.

Petitioner advanced two arguments in his response to the motion to dismiss that oppose the statute of limitations defense. First, he contends that he could not have brought his state

---

[3] Petitioner was also on notice that such "an amendment [to the parole process] might well occur." Woodley v. Dep't of Corr., 74 F. Supp. 2d 623, 631 (E.D. Va. 1999) (quoting Dufresne v. Baer, 744 F.2d 1543, 1548 (11th Cir. 1984)). The policy he refers to was adopted on May 11, 1995. See Brown-el v. Virginia Parole Bd., 948 F. Supp. 558, 561 (E.D. Va. 1996).

habeas corpus petition prior to the VPB's revocation of his parole on August 3, 2015 – the date that "triggered the events." [Dkt. No. 25 at 3]. Petitioner's good time credits, however, had already been "spent" when he was released on October 2, 2013. See Brown-El, 948 F. Supp. at 561. As Brown-el stated, "Put another way, petitioner 'used up' his good time credits to win early release on parole. Later, when he violated his parole, the VPB, pursuant to Virginia Code § 53.1-165, exercised its discretion to revoke his parole and order him incarcerated for the unserved portion of the original term of imprisonment." Id. at 560-61 (citation omitted).

> In sum, petitioner was never deprived of his good time credits by the VPB. To the contrary, he received all the good time credits he was entitled to pursuant to Virginia Code § 53.1-199 and these credits were then fully "used up" to allow petitioner's early release. Petitioner's good time credits no longer existed at the time of his early release on parole because they had been "used up," much like the money used to purchase a theater ticket is "used up." To continue this analogy, when petitioner had violated his parole and, as a consequence, was incarcerated by the VPB, it is much like the ticket purchaser being ejected from the theater for misbehavior. The ticket purchaser spent or "used up" his money to gain entry into the theater. His ejection from the theater for misbehavior in no way deprived him of the money he paid for the ticket. That money, like petitioner's good time credits, had already been spent to buy the right to enter the theater or in petitioner's case, the right to early release from prison. Accordingly, petitioner's due process claim fails.

Id.[4] Although petitioner's claims focus on his "loss of good time," he, just as the petitioner in Brown-el, lost nothing. Id. at 561, 562.

To be sure, petitioner's statement that he was "forced" to accept mandatory parole on October 2, 2013, [Dkt. No. 8 at 20], refutes his assertion that August 3, 2015 is the operative date

---

[4] Brown's analysis is supported by the text of the VPB's August 3, 2015 letter revoking petitioner's parole. The letter states that the petitioner's parole was revoked due to the January 29, 2015 Chesapeake Circuit Court conviction for grand larceny, but it makes no mention of good time credits. [Dkt. No. 18-1 at 4].

7

because October 2, 2013 is the genesis and linchpin of the claims in his petition. Indeed, in response to the motion to dismiss, he stated if he had not accepted mandatory release he would have been arrested, charged with criminal trespass, and then taken to the local jail. [Dkt. No. 25 at 7]. Thereafter, his parole would have been revoked and "*all of his good time*" would have been "*revoked.*" [Id.] (emphasis added). His statement is akin to asserting that but for his release on mandatory parole there would have been no basis for him to have filed his habeas petition. All of the claims in his petition precede or spring from his mandatory release on October 2, 2013.

Moreover, in calculating the one-year federal limitations period, a court only excludes the time during which "properly filed" state collateral proceedings pursued by petitioner were pending. See 28 U.S.C. § 2244(d)(2). Here, the Supreme Court of Virginia expressly determined that the habeas petition was barred by the statute of limitations set out in Virginia Code § 8.01-654(A)(2). Accordingly, the pendency of that petition would not have tolled the § 2254(d) limitations period. See Artuz v. Bennett, 531 U.S. 4, 8 (2000) (holding a state collateral proceeding is not "properly filed" for purposes of tolling the federal limitations period if it is filed untimely). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005). Thus, between October 2, 2013, the date petitioner's cause of action accrued, and December 31, 2016, the date he filed his federal petition, over three years passed, making the instant petition untimely by over two years.[5]

---

[5] Consequently, even if the operative date was August 3, 2015 as petitioner asserts in his response to the motion to dismiss, his federal petition is still untimely.

8

Petitioner's second point in his response to the motion to dismiss admits that October 2, 2013, the day he was "forced" to accept mandatory parole, was the genesis of his claims but asserts he could not have brought a habeas petition on that date because he was no longer in custody. [Dkt. No. 25 at 14]. He asserts he had no "injury" on that date until he was outside of the prison gates and that once outside that he was no longer in custody, which is a necessary requirement for filing a habeas petition. [Id.]. Petitioner's "no custody" argument has no merit. While parole releases an inmate from immediate physical custody the conditions it imposes that "confine and restrain his freedom" are sufficient to constitute he is in "custody" of the "Virginia Parole Board within the meaning of the habeas corpus statute ...." Jones v. Cunningham, 371 U.S. 236, 243 (1963). Virginia has a similar rule. See Escamilla v. Superintendent, Rappahannock Reg'l Jail, 777 S.E.2d 864, 868 (Va. 2015) ("petitioner who enjoys physical freedom but remains subject to a sentence not yet fully served, such as a suspended sentence, *supervised parole*, or probation, is under detention") (emphasis added).

The statute of limitations for federal habeas petitions under § 2254 may be tolled for equitable reasons; however, equitable tolling may be applied only in extraordinary circumstances. A petitioner seeking to equitably toll the statute of limitations is required to show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance" had prevented timely filing. Holland v. Florida, 560 U.S. 631, 645 (2010) (internal quotation marks and citation omitted).[6] A petitioner asserting equitable tolling "bears a

---

[6] Petitioner's response does not allege any new facts or legal rules. Accordingly, there is no basis for statutory tolling. See Whiteside v. United States, 775 F.3d 180, 183-84 (4th Cir. 2014) (holding factual predicate required for statutory tolling requires discovery of a new fact, but a legal rule or standard is not a fact).

9

strong burden to show specific facts" that demonstrate fulfillment of both elements of the test. Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)). The petitioner generally is obliged to specify the steps he took in diligently pursuing his federal claim. Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). In addition, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). It is widely recognized that equitable tolling is to be applied only infrequently. Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003).

The two arguments petitioner asserted in his response to the motion to dismiss each had no merit, and neither demonstrated diligence. Indeed, the record establishes that after his release on October 2, 2013, petitioner committed a new offense on March 10, 2014 – a mere five months after his release on mandatory parole. [Dkt. No. 18-2 at 4]. Petitioner, however, remained at large until November 4, 2014 when he was arrested. Petitioner was free for over thirteen months after his release and took no action with regard to his good time credits. Petitioner's conduct does not establish diligence, and he has pointed to no extraordinary circumstance. Accordingly, his federal petition is barred by the statute of limitations.

*B. Petitioner's Untimely State Petition*

Moreover, the Supreme Court of Virginia found that petitioner's claims, with respect to the challenged August 3, 2015 revocation, accrued on October 2, 2013 and that, therefore, the one-year state habeas statute of limitations began to run on that date. See Booker v. Dir. of the

Dep't of Corr., 727 S.E.2d 650, 651 (Va. 2012) (habeas petition "other than a petition challenging a criminal conviction or sentence, shall be brought within one year after the cause of action accrues.") (quoting Va. Code § 8.01-654). The Supreme Court of Virginia expressly dismissed the state habeas claim as untimely filed pursuant to the state habeas statute of limitations, Virginia Code § 8.01-654(A)(2), which constitutes precludes this Court's review of his claims.[7] See Bennett v. Angelone, 92 F.3d 1336, 1343 (4th Cir. 1996) ("habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and 'clearly and expressly' denied on the independent, adequate state ground of procedural default."). Virginia § 8.01-654(A)(2) is an adequate and independent bar that precludes federal review of a claim. Sparrow v. Dir., Dep't of Corrs, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (recognizing Va. Code § 8.01-654(A)(2) as an independent and adequate bar); Banks v. Clarke, No. 1:12cv1398, 2013 U.S. Dist. LEXIS 6069, 2013 WL 164087, at *2 (E.D. Va. Jan. 15, 2013) (finding Va. Code § 8.01-654(A)(2) was adequate and independent when applied to a revocation proceeding).

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255,

---

[7] In his Brief in Support, respondent states that the Supreme Court of Virginia dismissed the habeas petition as untimely, [Dkt. No. 18 at 3], and then appears to argue in the alternative that the Supreme Court of Virginia only dismissed some of petitioner's claims as untimely because that court provided an alternative holding regarding claims that concerned "good conduct credit and discretionary parole." Brown v. Ken Stolle, R. 151904 (May 17, 2016 Order). The text of the order, however, could not have been clearer: "the Court finds that the petition was not filed within one year after October 2, 2013, when petitioner alleges he was unlawfully released on mandatory parole and the cause of action accrued. Va. Code § 8.01- 654(A)(2). Accordingly, the Court is of the opinion that the petition was not timely filed." Id. Federal courts are bound by a state court's determination of a matter of state law. See Toghill v. Clarke, 877 F.3d 547, 559 (2017) (citations omitted). The state habeas petition, like the federal habeas petition, references October 2, 2013 on several occasion with respect to petitioner's claim. Brown v. Ken Stolle, R. No. 151904 at 15, 26, and 40.

260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton v. Muncy, 845 F.2d 1238, 1241-42 (4th Cir. 1988). A court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995). In this case petitioner mentions "injustice," but to the extent he references the miscarriage of justice exception, it is "narrow in scope" and is concerned with actual as compared to legal innocence. See Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citations omitted). "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial. Given the rarity of such evidence, 'in virtually every case, the allegation of actual innocence has been summarily rejected.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). The petitioner has presented no evidence to substantiate his assertion of a miscarriage of justice, and the record contains none. To the extent he assets his claims support may establish a miscarriage of justice those claims have no merit.

    *C. Miscarriage of Justice*

Throughout most of petitioner's claims, he argues that his loss of good time credits was due to the VPB's revocation of his mandatory parole, which in his view violated the U.S. Constitution's Ex Post Facto Clause. Specifically, he contends that the VPB's retroactive application of Virginia Code § 53.1-159 to him violates the Ex Post Facto Clause because it increased his punishment for the offenses to which he had been sentenced before January 1, 1995, the statute's effective date. Petitioner's position is without merit.

The Ex Post Facto Clause prohibits laws that retroactively increase the punishment for a crime that has already been committed. U.S. CONST., ART. I, § 10, cl. 1; Warren v. Baskerville, 233 F.3d 204, 206 (4th Cir. 2000). A law runs afoul of the ex post facto prohibition if it disadvantages the offender and applies to events occurring before its enactment, thereby altering the legal consequences of a crime after it was committed. Woodley, 74 F. Supp. 2d at 631 (citing Weaver v. Graham, 450 U.S. 24, 30 (1981)). A policy change that exercises pre-existing statutory powers, however, without a change in the statutory law itself, does not violate the Ex Post Facto Clause. United States v. Ellen, 961 F.2d 462, 465 (4th Cir. 1992); Brown-El, 948 F. Supp. at 561 (VPB's May 11, 1995 decision to exercise its discretionary authority pursuant to Va. Code §§ 53.1-159 - 165 to require a parole violator to serve entire unserved portion of sentence did not violate ex post facto prohibition); see also Portley v. Grossman, 444 U.S. 1311, 1313 (1980) (Rehnquist, J., circuit justice; motion for stay) (ex post facto prohibition does not apply to a "change in guidelines assisting [a government agency] in the exercise of its discretion.").

In this case, petitioner's punishment has not been increased, since the VPB has not incarcerated him for longer than the full term of his original sentences. The Fourth Circuit has explicitly rejected the ex post facto challenge petitioner presents, holding that the VPB possessed the authority to revoke good-time credits under Virginia Code § 53.1-165 before the 1994 amendments to Virginia Code § 53.1-159, and that the 1995 policy change did not violate the Ex Post Facto Clause because it was merely a change in a longstanding administrative policy. Warren, 233 F.3d at 207.[8]

---

[8] In rejecting the Ex Post Facto argument in Warren, the Fourth Circuit noted the Supreme

Petitioner's assertion of a "due process" violation also has no merit. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To succeed on his due process claim, petitioner must demonstrate (1) that he has a protected liberty interest within the meaning of the Fourteenth Amendment and (2) that the VPB denied him the procedural process he was due. See Brown-El, 948 F. Supp. at 560. While a Virginia inmate has a liberty interest in the opportunity to earn good-time credits while incarcerated, petitioner was not denied that interest because he received the full benefit of his earned good-time credits through his early release. Id. at 560-61. Petitioner effectively "used up" his good-time credits to obtain his early release, and he was not entitled to the return of these credits upon his reincarceration for violating conditions of his parole. Id. at 561.

Upon determining that a parolee has violated the terms of his or her parole, Virginia Code § 53.1-165 provides that the VPB, "in its discretion, may revoke the parole and order the reincarceration of the prisoner for the unserved portion of the term of imprisonment originally imposed upon him." Additionally,

---

Court had recognized

> the *Ex Post Facto* Clause should not be used for "'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.' . . . The States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." Garner v. Jones, 529 U.S. 244, 252 (2000) (quoting California Dept. of Corrections v. Morales, 514 U.S. 499, 508 (1995)). In this case, the Virginia Parole Board made a policy decision that was within the parameters of existing state law. If the States are to have any freedom in developing optimal parole systems, they must be able to make policy adjustments without raising the specter of constitutional litigation. See Garner, 529 U.S. at 252; Roller v. Gunn, 107 F.3d 227, 237 (4th Cir. 1997).

Warren, 233 F.3d at 208.

> [i]n 1994, the Virginia legislature amended § 53.1-159 to give the Parole Board authority to forfeit a mandatory parole violator's good time credits. The amended statute provides that prisoners who have their parole revoked may have "to serve the full portion of the term imposed by the sentencing court which was unexpired when the prisoner was released on parole." Va. Code Ann. § 53.1-159 (Michie 1998). In 1995, the Parole Board adopted a new policy that required all mandatory parole violators to serve all of their original sentences without the benefit of their accumulated good time credits.

Warren, 233 F.3d at 206. Here, petitioner violated the terms of his parole by committing a new crime. Thus, the VPB properly exercised its statutory authority to reincarcerate him for the entire unserved portion of his sentence, without the benefit of any previously accrued good time credits. Id. at 207 (quoting Va. Code § 53.1-165(A)). Petitioner has not been deprived of anything and knew on October 2, 2013 that if he violated his parole he risked losing the benefit of the good time credits that had advanced his mandatory release date. [Dkt. No. 8 at 20].

Petitioner's assertion he was denied "equal protection" is devoid of a factual basis. When alleging an equal protection violation, a petitioner must make a threshold showing that he and the comparator inmate were treated differently and were similarly situated. See Reffitt v. Nixon, 917 F. Supp. 409, 414 (E.D. Va.), aff'd mem., No. 96-6808, 1997 U.S. App. LEXIS 19887, 1997 WL 428600 (4th Cir. July 31, 1997). The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary classifications by state actors, ensuring that all people similarly situated will be treated the same. U.S. CONST. AMEND. XIV. To succeed on an equal protection claim, petitioner must show that (1) he was treated differently from others; (2) who were similarly situated; and (3) this unequal treatment was the result of intentional or purposeful discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001); Blagman v. White, 112 F. Supp. 2d 534, 538 (E.D. Va. 2000). Petitioner's allegations fall far short of such a threshold showing.

The release of a prisoner like petitioner on mandatory parole is based solely on a time calculation. Virginia Code § 53.1-159 provides prisoners are to be released six months prior to their final release date; the suitability of the prisoner for such release plays no part in such a determination.[9] Only persons revoked while on mandatory parole, therefore, are similarly situated. Nowhere does he allege that he was similarly situated to another individual and treated differently, or that the VPB intentionally discriminated against him in revoking his parole. See Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990).

Like his other assertions of a constitutional violation, petitioner's double jeopardy argument has no merit and was rejected in Brown-El.

> [P]etitioner claims that his constitutional right against double jeopardy was violated when the VPB revoked both his good time credits and parole as punishment for his parole violation. It is settled that parole revocation is not an "essentially criminal" proceeding and therefore, is not protected by the double jeopardy clause. Breed v. Jones, 421 U.S. 519, 528-29 (1975) (citing Helvering v. Mitchell, 303 U.S. 391, 398-99 (1938)). Furthermore, this claim fails as this is plainly not a case where there is double punishment for a single offense. Breed, 421 U.S. at 519. The offense was violation of parole and the punishment was incarceration for a period of time equal to the unserved portion of petitioner's sentence. As previously shown, petitioner's good time credits were not revoked; they were "used up" or consumed. Accordingly, petitioner's double jeopardy claim fails.

Brown-El, 948 F. Supp. at 562.

Lastly, petitioner asserts two matters of state law within his claims that have no merit and do not implicate petitioner's constitutional rights. First, that the VPB violated state law by "lumping" his sentences together and not releasing him on mandatory parole from each sentence.

---

[9] Section 53.1-159 does provide that if the VPB receives information that it determines amounts to reasonable cause that an inmate due to be released on mandatory parole "poses a clear and present danger to the life of any person," the VPB can delay the prisoner's release for up to six months to allow for investigation of the information.

16

Virginia Code § 53.1-159 states, in pertinent part, that "Every person who is sentenced and committed under the laws of the Commonwealth to the Department of Corrections or as provided for in §§ 19.2-308.1, 53.1-152 or § 53.1-153 shall be released on parole by the Virginia Parole Board six months prior to *his date of final release.*" Id. (emphasis added). The plain language of the statute refutes his interpretation that mandatory release is affixed to each sentence imposed by a court. See Warren, 233 F.3d at 207; see also Brown, 886 F. Supp. at 534 (holding no constitutional right that requires a state allow an inmate to serve his sentences in the order of his preference).

Petitioner also claimed a breach of contract by the VPB regarding his loss of good time credits. At best, this claim is duplicitous and based upon an alleged contract between himself and the VPB – a matter of state law. Federal courts, however, do not decide matters of state law in habeas. See Wright v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998).

### V. Conclusion

In sum, the petitioner has not established a miscarriage of justice, and he has presented no argument or evidence to establish cause and prejudice to allow the Court to review his claims. The petition is barred as untimely under the federal statute of limitations, and the dismissal of his state petition pursuant to an adequate and independent state ground precludes federal review. For the foregoing reasons, respondent's Motion to Dismiss must be granted, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). Petitioner fails to meet this standard. Accordingly, a certificate of appealability will be DENIED.

Entered this 14th day of March 2020.

/s/ Claude M. Hilton
United States District Judge

Alexandria, Virginia